IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LARRY G. SOLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV491 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Larry G. Soles, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 25, 2009, both alleging disability beginning on January 2, 2006. (Tr. 323–24, 325–28.)[1] The applications were denied initially and again upon reconsideration. (Tr. 188–92, 193–97, 200–03.) Plaintiff then requested and

---

[1] Transcript citations refer to the administrative record.

1

was provided a hearing before Administrative Law Judge Frank D. Armstrong ("ALJ"). (Tr. 104–36.) Plaintiff and his attorney appeared at the August 23, 2010 hearing. (Tr. 104.) Afterward, the ALJ issued a decision finding that Plaintiff was not disabled under the Act. (Tr. 141–56.) On June 8, 2011, the Appeals Council granted Plaintiff's request for review, remanding the case back to the ALJ for consideration of the potential effects of Plaintiff's right-eye blindness and hearing loss and, if warranted, to obtain additional testimony from a vocational expert. (Tr. 157–62.)

On October 12, 2011, Plaintiff, again represented by counsel, testified at a second hearing before a different judge—ALJ McArthur Allen. (Tr. 63–103.) ALJ Allen issued a decision on November 4, 2011 finding Plaintiff not disabled under the Act. (Tr. 163–77.) On January 11, 2012, the Appeals Council granted Plaintiff's request for review of Plaintiff's obesity and depression. (T. 184–87.)

On January 9, 2013, Plaintiff testified at a third hearing, before ALJ Allen. (Tr. 37-62.) On February 26, 2013, ALJ Allen issued a decision finding Plaintiff not disabled under the Act. (Tr. 10–36.) On May 20, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ decision, rendering the ALJ's decision the final decision of the Agency for purposes of review. (Tr. 1–7.)

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not disabled within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's

2

review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Perales*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by

3

substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

#### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[4] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, at step one, the ALJ found that Plaintiff has not engaged in substantial activity since January 2, 2006, the amended onset date. (Tr. 15.) At step two, the ALJ found that Plaintiff has the following severe impairments: foot drop of the left foot; retrolisthesis at L5-

---

[4] "Residual functional capacity" ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

S1; history of laminotomy in 1992; right eye blindness; radiculopathy; history of corneal decompensation of the left eye in 2006; deafness in the left ear; partial hearing loss in the right ear; depression; obesity; and diabetes mellitus. (Tr. 16.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one listed in Appendix 1. (*Id.*) At the fourth step of the sequence, the ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. 26.) At step five, the ALJ determined that that "there are jobs that exist in significant numbers in the national economy [Plaintiff] can perform." (Tr. 26.) Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the Act and denied his claim. (Tr. 28.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers, as well as state consultants. (Tr. 18–26.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, except that "[Plaintiff] should only occasionally climb stairs or ramps, only occasionally bend, balance, stoop, crawl, crouch, or kneel . . . he would have to work in a low noise environment . . . he should have only occasional contact with co-workers and the general public . . . ." (Tr. 18-19.) Plaintiff had additional limitations noted in the ALJ's decision. (*Id.*)

### C. Appeal of Adverse Decision

Plaintiff appealed the ALJ's adverse decision dated February 26, 2013 requesting the Appeals Council to review this decision. (Tr. 1.) The Appeals Council denied the request.

6

*Id.*

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that he was not disabled for purposes of the Act. (Docket Entry 12 at 1). Specifically, Plaintiff avers that the ALJ erred in his evaluation in step three of Plaintiff's impairments under Listing 1.04 for spinal impairments. *Id.* As explained below, the undersigned concludes that the ALJ's conclusion at step three is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### A. The ALJ's Factual Findings

Plaintiff argues that the ALJ erred by finding that Plaintiff did not meet Listing 1.04A and that medical evidence in the record does in fact establish that Plaintiff meets the listing criteria. (Docket Entry 12 at 5–7.) The Commissioner argues that substantial evidence supports the ALJ's decision finding that Plaintiff did not meet the requirements for Listing 1.04A. (Docket Entry 14 at 7–12.)

To satisfy Listing 1.04A, a plaintiff first must show that he suffers from a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, App'x 1, § 1.04. Second, he must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." *Id.* Lastly, under 1.04A, he must show the following:

> A. Evidence of nerve root compression characterized by neuronatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

7

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* § 104.A.

In addressing the Listing 1.04A at step three, the ALJ stated:

> [R]egarding the claimant's back impairment, the evidence of record does not demonstrate that the claimant meets Listing 1.04. There is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain or limitation of motion of the straight-leg raising test (sitting and supine).

(Tr. 16.) The ALJ also noted that the medical record lacked evidence of Plaintiff's "inability to ambulate effectively." *Id.* Plaintiff argues that the record demonstrates that he does in fact meet the listing, relying on the following medical evidence:

> The record demonstrates that as early as September 2006, Mr. Soles was suffering from low back pain which radiated into his leg with tingling and weakness. (Tr. 518–19.) His MRI demonstrated disc bulging at L4–5 despite his past surgery at this level with scar tissue extending into the posterior aspect of the disc. (Tr. 623.) On examination, he had reduced strength in his anterior tibialis in his left leg with foot drop. (Tr. 518–19.) Further imaging in October 2006 revealed left foraminal narrowing at the L4-5 due to disc bulge with compromise of the left sided nerve – no compromise of the right side or centrally. (Tr. 520–21.) This is neuroanatomically consistent with his left sided pain, weakness and sensory disturbance. On exam in November 2006, he had 2/5 strength in [his] left anterior tibialis and 3/5 strength in other muscles in his left foot. He was diagnosed with lumbar radiculopathy with progressive neurological deficit . . . Though he did not have a new compressive lesion, he had post-operative change at his original surgical site on his back. (Tr. 524–25.)
>
> . . .
>
> From August 2007 through 2012, Mr. Soles continued to objectively display reduced strength in his left foot . . . complain[ed] of numbness and tingling . . . [and] was observed to have decreased sensation in his left leg on examination. (Tr. 647; 719; 845–46; 992.)

8

(Docket Entry 12 at 6–7.) The Commissioner argues that "the ALJ's findings are amply supported by the record and should not be disturbed." (Docket Entry 14 at 9.)

Having reviewed the pleadings and the entire record, the undersigned concludes that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet Listing 1.04A. This is not a case where the ALJ failed to consider a listing,[5] but rather a matter where the ALJ considered the evidence in the record, and determined that although Plaintiff's foot drop of the left foot, retrolisthesis at L5-S1, history of laminotomy, and radiculopathy were severe impairments, Plaintiff's impairments individually or combined did not meet Listing 1.04A or any other listing. (Tr. 16–17.) It is the job of the ALJ to weigh evidence and resolve any evidentiary conflicts. To the extent Plaintiff asserts that medical evidence is present that strongly supports Listing 1.04A, the ALJ concluded otherwise, considering all evidence in the record, and his decision is supported by such evidence.

For example, Plaintiff's September 2006 MRI scan showed a slight disc bulge, but "no evidence of recurrent disc herniation" and "no evidence of neural compression." (Tr. 623.) An October 2006 scan reported a slight disc bulge with "mild left neural foraminal narrowing," but "no compromise of canal." (Tr. 521.) Other evidence showed a lack of clear compressive lesion. (Tr. 523; 525; 530.) Plaintiff has documented instances of intact sensation and normal reflexes, (Tr. 528; 548; 560; 569; 573; 578; 637; 647; 763; 863; 866; 869; 872; 876; 880; 884; 888; 925; 933; 940; 972; 1046) and normal muscle strength. (Tr. 586; 732;

---

[5] *E.g., Ketcher v. Apfel*, 68 F. Supp. 2d 629, 646 (D. Md. 1999); *Drane v. Colvin*, No. 1:10CV901, 2014 WL 408753, at *4–5 (M.D.N.C. Feb. 3, 2014) (unpublished); *Martin v. Colvin*, No. 1:11CV408, 2014 WL 4114207, at *4–5 (M.D.N.C. Aug. 20, 2014) (unpublished).

9

854; 855.) Additionally, the evidence of record shows Plaintiff on several occasions walking with a normal gait. (Tr. 519; 560; 728; 730; 734; 995.) Thus, the ALJ's conclusion that Plaintiff does not meet Listing 1.04A is supported by substantial evidence.

### B. The Sufficiency of the ALJ's Explanation

Plaintiff briefly argues that the length of the ALJ's discussion was insufficient. (Docket Entry 12 at 5–6.) An ALJ must give a sufficient explanation of his rulings to include "evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Relatedly, the ALJ is required to explicitly indicate "the weight given to all relevant evidence." *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)).

In this case, the ALJ's opinion contains sufficient detail and explanation. The ALJ explicitly addressed Listing 1.04A. (Tr. 16.) Additionally, the ALJ devoted several pages to discussing the opinions of physicians and other experts and explicitly assigned weight to each of them. (Tr. 20–25.) Within that discussion, the ALJ gave his first opinion of November 4, 2011 great weight. (Tr. 25.) In that opinion, the ALJ also concluded that Plaintiff did not meet the criteria of Listing 1.04A and made specific findings as to Plaintiff's symptoms, diagnoses, and conditions. (Tr. 169, 172–73.) The ALJ incorporated this analysis into his February 26, 2013 opinion. (Tr. 25.) This supplements the ALJ's discussion of Listing 1.04

in the latter opinion, and provides sufficient explanation for this Court to conclude that there was substantial evidence to support the ALJ's determination. (*See* Tr. 16.)

### C. The ALJ's Application of the Law

Plaintiff also argues in his Response and Surreply that Listing 1.04A does not require proof of an inability to ambulate effectively. (Docket Entry 17 at 1–2; Docket Entry 20 at 1–2.) The Commissioner disagrees, pointing to the context of Listing 1.04A as a specific rather than general subsection and its place within the structure of the regulation. (Docket Entry 18 at 2–9.) As noted above, the ALJ found during his analysis that Plaintiff had not shown evidence of an inability to ambulate effectively. (Tr. 16.)

"It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail." *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013). Courts generally defer to an agency's interpretation of its own regulation unless it is "'plainly erroneous or inconsistent with the regulation' . . . [or] when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 461–62 (1997)).

Plaintiff cites *Radford* to support his position that the Commissioner's reading of Listing 1.04A is flawed. 734 F.3d at 288; *see also* Docket Entry 17 at 1–2. In that case, the Fourth Circuit rejected the Commissioner's interpretation of Listing 1.04A, which attempted to include a "proximity-of-findings" requirement for its listed symptoms. *Radford*, 734 F.3d at 293. The court did so for two reasons, neither of which applies in this case. First, the court

11

noted that the Commissioner could cite to no agency authority (Social Security ruling, regulation, letter, agency memorandum, etc.) to suggest that the Commissioner had ever adopted a proximity-of-findings requirement prior to litigation. *Id.* at 294. Such "'*post hoc* rationalization[s]'" do not receive deference. *Id.* (quoting *SmithKline*, 132 S. Ct. at 2166). Second, the court found the Commissioner's interpretation to be "plainly inconsistent with the text and structure of the regulation." *Id.*

Here, the Commissioner points to 20 C.F.R. §§ 404.1525(c)(2) and 416.925(c)(2), which are nearly identical, in support of her argument. Section 416.925(c)(2) reads:

> The introduction to each body system contains information relevant to the use of the listings in that body system; for example, examples of common impairments in the body system and definitions used in the listings for that body system. We may also include specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that your impairment(s) satisfies the criteria of a particular listing in the body system. Even if we do not include specific criteria for establishing a diagnosis or confirming the existence of your impairment, you must still show that you have a severe medically determinable impairment(s), as defined in §§ 416.908, 416.920(c), and 416.924(c).

20 C.F.R. § 416.925(c)(2). Moving to § 416.925(c)(3), that subsection clarifies that "[w]e will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, *including any relevant criteria in the introduction*, and meets the duration requirement." 20 C.F.R § 416.925(c)(3) (emphasis added). This section contemplates a scheme that organizes criteria within each listing from the general to the specific while including both as substantive requirements.

Listing 1.00 contains the introduction to the musculoskeletal system listings, and Listing 1.04A falls under that category. 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.00. It

12

defines "loss of function" as used within the listing as "the inability to ambulate effectively on a sustained basis for any reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any reason."[6] § 1.00(B)(2)(a). The next subsection further defines both of these terms. § 1.00(B)(2)(B).

The broader structure of the regulation indicates that loss of function is an integral component of musculoskeletal impairments. For example, a claimant who lost her foot due to amputation could only qualify under Listing 1.05 if the amputation occurred "at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively." § 1.05(B). Plaintiff's urged reading of Listing 1.04A, which would specifically permit functionally able individuals to qualify for disability benefits under Listing 1.04 (by carving out an exception for proving loss of function), does not seem plausible given Listing 1.05's fairly stringent limitation on the eligibility of amputees. In this way, common sense also factors into the Court's analysis and cuts in favor of the Commissioner's position. *See Radford*, 734 F.3d at 294.

The Commissioner cites other relevant agency regulations that indicate her interpretation here "reflect[s] the agency's fair and considered judgment on the matter." *SmithKline*, 132 S. Ct. at 2166. This evidence also squares the Commissioner's interpretation with "the text and structure of the regulation." *Id.*

Several district courts in this circuit have found that Listing 1.04A includes a

---

[6] While loss of function requires proving either one or the other, Plaintiff's argument addresses the ALJ's decision that there was no evidence that Plaintiff was unable to ambulate effectively.

requirement that a claimant prove ineffective ambulation. *See McKoy v. Astrue*, No. 4:08-2329-CMC-TER, 2009 WL 2782457, at *16 (D.S.C. Aug. 28, 2009) (using similar reasoning as above); *see also Miller v. Colvin*, No. 1:12-CV-371-GCM, 2014 WL 2208119, at *3 (W.D.N.C. May 28, 2014); *Vest v. Astrue*, No. 5:11 CV047, 2012 WL 4503180, at *4 (W.D. Va. Sept. 28, 2012); *Moss v. Astrue*, No. 2:11–cv–44, 2011 WL 7768883, at *9 (N.D.W. Va. Dec. 30, 2011); *Owens v. Astrue*, No. CIV.A. 9:11-0100-BM, 2011 WL 5869809, at *5 (D.S.C. Nov. 21, 2011); *McKoy v. Astrue*, No. 4:08–2329, 2009 WL 2782457, at *16 (D.S.C. Aug. 28, 2009). However, this view is not unanimous across the jurisdiction. *Roybal v. Colvin*, No. 1:11CV389, 2014 WL 2574509, at *1 (M.D.N.C. June 9, 2014) ("But the ability to ambulate effectively is not responsive to the question whether a claimant meets Listing 1.04A; rather, it is required by Listing 1.04C."). The Fourth Circuit has not considered the question explicitly, but other circuits that have done so have found that Listing 1.04A does require proof of ineffective ambulation. *Leibig v. Barnhart*, 243 F. App'x 699, 702 (3d Cir. 2007) ("[L]isting [1.04A] requires an inability to ambulate effectively or an inability to perform fine and gross movements effectively."); *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) (finding that all musculoskeletal impairments under Listing 1.00 require such proof).

District courts in other circuits are also split on the issue. *Compare Briner v. Astrue*, No. 1:09-CV-429-WTL-TAB, 2010 WL 3781718, at *5 (S.D. Ind. Aug. 18, 2010) ("Listing 1.04A requires an inability to ambulate effectively."), *report and recommendation adopted*, 2010 WL 3781558 (S.D. Ind. Sept. 20, 2010), *with Snider v. Colvin*, No. 14-CV-1249, 2015 WL 4180889, at *8 (C.D. Ill. July 10, 2015) ("Listing 1.04A does not require evidence of inability to ambulate

effectively.") (disagreement within the Seventh Circuit). *Compare Reed v. Comm'r of Soc. Sec.*, No. 07-15275, 2009 WL 877691, at *8 n.4 (E.D. Mich. Mar. 30, 2009) ("An inability to 'ambulate effectively' is part of Listing 1.04C, but is also applicable to an examination of 1.04A given that both a loss of strength and feeling can inhibit walking."), *with Irvin v. Comm'r of Soc. Sec.*, No. 1:12-CV-837, 2013 WL 3353888, at *10 n.8 (S.D. Ohio July 3, 2013) ("Listing 1.04A does not require the 'inability to ambulate effectively.'") (disagreement within the Sixth Circuit). Despite these disagreements, the opinions of the Third and Fifth Circuits, in addition to the clear majority of the districts within our circuit, lead this Court to conclude that the weight of authority supports the argument that Listing 1.04A requires proof of a claimant's inability to ambulate effectively. This precedent strengthens the Commissioner's position with respect to both concerns voiced by the court in *Radford*. Even if this Court were to find that Listing 1.04A does not require an inability to ambulate effectively, the Court nevertheless concludes that the ALJ's decision that claimant does not meet Listing 1.04A is supported by substantial evidence.

Because the Commissioner's interpretation of Listing 1.04A is neither plainly inconsistent with the text and structure of the regulation nor a *post hoc* rationalization, it is entitled to deference in this matter. Therefore, the ALJ did not err by considering that Plaintiff had not demonstrated a loss of ambulatory function in his analysis under Listing 1.04A.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and that the final decision of the Commissioner be upheld.

                                                         _____
                                                         Joe L. Webster
                                                         United States Magistrate Judge

November 23, 2015
Durham, North Carolina